UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

GERARDO ANTONIO VALLEJOS-HERNANDEZ, )
)
)
Petitioner, )
)
v. )                No. 2:26-cv-00398-JRO-MG
)
SAMUEL OLSON, Field Office Director, )
Chicago Field Office, Immigration and )
Customs Enforcement, in his official )
capacity, )
MARKWAYNE MULLIN, Secretary, U.S. )
Department of Homeland Security, in his )
official capacity, )
TODD BLANCHE, Acting U.S. Attorney )
General, in his official capacity, )
DAVID J. VENTURELLA, Acting Director )
of U.S. Immigration and Customs )
Enforcement, in his official capacity, )
BRISON SWEARINGEN, Clay County )
Sheriff, Clay County Sheriff's Office, in )
his official capacity, )
)
Respondents. )

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Gerardo Antonio Vallejos-Hernandez, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or the Fifth Amendment's Due Process Clause. Nor does the revocation of his parole violate the INA, the APA, the *Accardi* doctrine or the Fifth

Amendment.   The Court therefore **DENIES** his Petition for Writ of Habeas Corpus.  Dkt. [1].

## I. BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence.  *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of Nicaragua.  Dkt. 1 at 6–7; Dkt. 10 at 2.  On or about April 25, 2022, he entered the United States without inspection.  Dkt. 1 at 6–7; Dkt. 10 at 2.  He was apprehended by U.S. Immigration and Customs Enforcement ("ICE"), issued a Notice to Appear ("NTA"), and issued a temporary Form I-94, which granted temporary parole under 8 U.S.C. § 1182(d)(5) and permitted him to be present in the United States until June 26, 2022, approximately 30 days after his entry.  Dkt. 1 at 2, 7; Dkt. 10 at 2; *see* Dkt. 10-1 at 9.  Nevertheless, Petitioner has been living in the country since then.  Dkt. 1 at 2, 7; Dkt. 10 at 2.  His asylum application is pending.  Dkt. 1 at 2, 7; Dkt. 10 at 2; *see* Dkt. 1-1.

On April 14, 2026, Petitioner appeared for a "check-in" appointment at an ICE office in Chicago.  Dkt. 1 at 2, 7; Dkt. 10 at 2; Dkt. 10-1 at 6.  ICE officers

took him into custody pursuant to an I-200 warrant. Dkt. 1 at 7; Dkt. 10 at 2; Dkt. 10-1 at 6, 8. DHS also initiated removal proceedings by reissuing an NTA. Dkt. 1 at 7–8; Dkt. 10 at 2–3; Dkt. 1-2; Dkt. 10-1 at 1–4. The NTA charges state that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). Dkt. 10-1 at 4. Petitioner was also formally served with written notice that his parole was no longer effective pursuant to 8 C.F.R. § 212.5(e). Dkt. 10-1 at 10. The letter stated that "[n]either urgent humanitarian reasons nor significant public benefit warrant your continued parole at this time." *Id.*

Petitioner was detained at the Clay County Justice Center in Brazil, Indiana, when he commenced this habeas action. Dkt. 1 at 5, 7; Dkt. 10 at 3; *see* Dkt. 10-2 at 1. He names as Respondents Samuel Olson, Field Office Director, Chicago Field Office, ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd Blanche, Acting U.S. Attorney General; David Venturella, Acting Director of ICE; and Brison Swearingen, Clay County Sheriff. Dkt. 1 at 6–7.

**B.    Statutory Background**

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and

8 U.S.C. § 1226.  While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission."  Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted."  8 U.S.C. § 1225(a)(1).  The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108–09 (2020).  An applicant is subject to expedited removal if he is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(i).[1]  Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* (emphasis added).  Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution." *Id.*

---

[1] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation.  8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

§ 1225(b)(1)(A)(ii), (B)(ii).  Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing.  *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam*, 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)).  Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed."  *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)." *Jennings*, 583 U.S. at 287.  With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed."  *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and

5

terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II. DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that Section 1226(a) governs his detention instead and that he not only has a right to a bond hearing but is entitled to immediate release. Dkt. 1 at 19–20, 34–37; *see also* dkt. 12 at 3, 11–12. He further argues that DHS's revocation of his parole was arbitrary and capricious in violation of the Administrative Procedure Act and failed to comply with DHS regulations governing parole revocation. He also brings a claim under the Fifth Amendment's Due Process Clause. Ultimately, he is not entitled to the relief he seeks.[2]

**A.  Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.[3]**

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings. When construing a statutory term of the INA, the Court

---

[2] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 8–9; Dkt. 12 at 9–10. Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 10, 11, so the Court does not address the issue.

[3] For the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's dissenting opinion in

first considers what it means "when used in everyday speech" and "ordinary usage." *Mullin v. Al Otro Lado*, 609 U.S. ---, No. 25-5, 2026 WL 1825741, at *6–7 (U.S. June 25, 2026) (construing the phrase "arrives in the United States" in 8 U.S.C. § 1225(a)(1)); *accord United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (the Court "start[s] with the text of the statute to ascertain its plain meaning" (internal quotation and citation omitted)).  In determining a statute's plain meaning, the Court is guided by the statutory language at issue and the language and design of the statute as a whole.  *Melvin*, 948 F.3d at 852.  Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ."  *Id.*

To start, Petitioner is an "applicant for admission."  The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission."  8 U.S.C. § 1225(a)(1).  While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader.  "[A]pplicant for admission" includes any

---

*Castañon-Nava v. U.S. Department of Homeland Security*, 175 F.4th 828 (7th Cir. 2026). Judge Kirsch's reasoning there is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions.  *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).  The Court incorporates by reference its analysis of the Seventh Circuit's *Castañon-Nava* decisions from its prior orders, including its observation that neither the stay opinion or the merits opinion in that case establishes binding Seventh Circuit precedent on the Section 1225(b)(2)(A) issue.  *E.g., Sidhant v. Swearingen,* 2026 WL 1424982, at *3–5 (S.D. Ind. May 20, 2026).

unadmitted alien present in the United States no matter when they entered or how long they have been here.  *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission.").  There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted.  He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2).  *Jennings*, 583 U.S. at 287.  The Court has established that Section 1225(b)(1) does not apply to Petitioner.  *See* Section I.B, *supra*.  Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country.  Thus, the plain and ordinary terms of Section 1225(b)(2)(A) mandate his detention pending removal proceedings.  *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

On reply, Petitioner acknowledges this Court's interpretation of the INA and "respectfully preserves his disagreement . . . for purposes of appellate

8

review."  Dkt. 12 at 2.  In his petition, however, he raises several arguments rejecting this straightforward application of Section 1225 to argue that Section 1226(a)'s bond redetermination provision applies instead.  The Court will briefly explain why these arguments are unpersuasive.

First, Petitioner argues that Section 1225(b)(2)(A) applies only to "recently arrived noncitizens seeking entry at a border or port of entry."  Dkt. 1 at 11; *see id.* at 3, 20.  By contrast, on Petitioner's reading, Section 1226(a) "sets out the default rule" that the Government may detain noncitizens "already in the country" "pending a decision on whether the [noncitizen] is to be removed from the United States."  *Id.* at 10 (alteration in original) (quoting *Jennings*, 583 U.S. at 288–89).  But general characterizations of a statute's overall purpose cannot substitute for its specific and plain words.  *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text.").  As this Court discussed in a prior Order, *Demir*, 2026 WL 706485, at *5, Section 1225 concerns "applicant[s] for admission"—a clearly defined term that includes but is not restricted to arriving aliens or other recent border crossers.  It includes all "alien[s] present in the United States who ha[ve] not been admitted."  8 U.S.C. § 1225(a)(1).

The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*.  That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms.  *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins at the Nation's borders and ports of entry, where the

9

Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)). *Accord Buenrostro-Mendez,* 166 F.4th at 505; *Avila,* 170 F.4th at 1136–37.

Granted, it is beyond question that Section 1225 applies to "arriving aliens." Section 1225, however, does not apply *only* to arriving aliens but to all non-admitted aliens present in the country—that is, all "applicants for admission"—regardless of when they arrived. *Cf. Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 n.8 (construing 8 U.S.C. § 1158(a)(1), which is phrased similarly to 8 U.S.C. § 1225(a)(1), and noting that "'physically present in the United States' and 'arrives in the United States' are not coterminous"). Any argument based on how this statute applies in many or even most cases does not tell us anything about what it means in every case, and specifically, nothing about what it means when applied to the facts before the Court today.

Second, Petitioner argues that Section 1225 does not apply because the phrase "seeking admission" implies an action that "would most logically occur at the border upon inspection." Dkt. 1 at 13. The Court has previously rejected this argument. *See Demir*, 2026 WL 706485, at *4; *Singh v. Swearingen*, No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026).[4]

---

[4] The Court incorporates by reference its more fulsome statutory interpretation of "seeking admission" in 8 U.S.C. § 1225(b)(2)(A) as set forth in *Demir*, 2026 WL 706485, at *3–5, *Singh*, 2026 WL 847715, at *5–7, and *Gonzalez-Lopez v. Swearingen*, No. 2:26-cv-00200-JRO-MG, 2026 WL 1270065, at *7–8 (S.D. Ind. May 8, 2026).

Read most plainly, the term "seeking admission" is simply a synonym for applying for admission.  And applying for admission is a participial form of the noun "applicant for admission."  *See Buenrostro-Mendez*, 166 F.4th at 502 ("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)); *cf. Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *3 (stating that Section 1225(a), which defines the term "applicant for admission," "governs the inspection of aliens who *seek admission* to the United States" (emphasis added)).  And that is what Petitioner is seeking now, regardless of when he arrived or how long he has lived in the United States.

Third, Petitioner argues that Section 1226, not Section 1225(b)(2)(A), "expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection."  Dkt. 1 at 3.  Petitioner argues that *all* aliens arrested and placed in removal proceedings and charged as being inadmissible are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c).  *Id.* at 10.  This argument both overlooks the text of Section 1225(b)(2)(A)—stating the applicant for admission "shall be detained" for removal proceedings—and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes—

11

like the INA—that are often interspersed with "specific solutions" to "specific problems." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992), and *Varity Corp. v. Howe*, 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)). "The general/specific canon is perhaps most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226. Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Executive is free to exercise its discretion in how it executes the provisions of

12

Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."

Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226 superfluous as to the Petitioner. *Contra* Dkt. 1 at 15. Rather, it harmonizes the two provisions. *E.g.*, *Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 ("Some statutes, for instance, pick out a 'general' category alongside a 'specific' subcategory that 'might in other circumstances be deemed surplusage.'" (quoting *Lorenzo v. SEC*, 587 U.S. 71, 80 (2019)).

At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions. *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *8 ("We have acknowledged that Congress sometimes enacts provisions that are superfluous." (cleaned up)); *Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *Castañon-Nava*, 175 F.4th at 877 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

13

Fourth, Petitioner argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to "decades of prior [agency] practice." Dkt. 1 at 16. However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice. And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)). Past practice aside, Respondent's interpretation of "seeking admission" is not entirely novel. *See Matter of Lemus-Losa*, 25 I. & N. Dec. at 743. And regardless, courts have "neither the ability nor the authority to assess and countermand" "the administrations' policy choice." *Al Otro Lado*, 609 U.S. ---, 2026 WL 1825741, at *5 n.5. "Our authority is limited to interpreting and applying the law." *Id.*

\* \* \*

Stepping back to consider the big picture, Petitioner's perspective on the meaning of Section 1225(b)(2)(A) necessarily implies that aliens who evade inspection and detention at a port of entry enjoy the privilege of a bond hearing while those who submit to inspection upon first arrival do not. As the Fifth Circuit explained, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to "reduce th[at] incongruity." *Buenrostro-Mendez*, 166 F.4th at 499; *see also Avila*, 170 F.4th at 1135–36; *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (explaining IIRIRA "did away with" the "anomaly

14

whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who had crossed the border unlawfully"). Nothing in the text of the statute suggests that the privilege of a bond hearing is based upon the arbitrary standard of avoiding inspection and living in the United States for an unspecified time.

Granting habeas relief on the premise that ICE does not have the statutory right to detain him—despite his non-admitted status—leads to the conclusion that the force of Section 1225(b)(2)(A) arbitrarily dissipates with time. And Petitioner argues this point explicitly. Dkt. 1 at 12 (stating Respondents' application of Section 1225 "affects those who have resided in the United States for months, years, and even decades"). That is plainly not what Congress meant when it wrote "seeking admission" in Section 1225(b)(2)(A) or enacted the bond hearing provision in Section 1226(a). It is also inconsistent with Congress's IIRIRA amendments and encourages the "perverse incentive to enter at an unlawful rather than a lawful location" against which the Supreme Court has warned. *Thuraissigiam*, 591 U.S. at 140 ("Like an alien detained after arriving at a port of entry, an alien like respondent is 'on the threshold.' The rule advocated by respondent and adopted by the Ninth Circuit would undermine the 'sovereign prerogative' of governing admission to this country and create a perverse incentive to enter at an unlawful rather than a lawful location." (citations omitted)).

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A). As such,

15

Respondents have not violated Section 1226(a) by detaining him without a bond hearing. As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.

**B.    Because Petitioner's parole automatically expired in 2022 by operation of law, DHS did not violate the APA or the *Accardi* doctrine.**

Petitioner further argues that DHS's letter indicating that his parole had been revoked was unlawful because DHS did not undertake an "individualized review" of whether the purpose of Petitioner's parole had been accomplished. Dkt. 1 at 24; *see also* Dkt. 12 at 5–7. He contends DHS's actions were arbitrary and capricious in violation of the APA and failed to comply with the agency's governing regulations in revoking his parole in violation of the *Accardi* doctrine. The Court disagrees.

Under the APA, a reviewing court may hold unlawful and set aside "final agency action" found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 704, 706. The scope of the Court's "abuse of discretion" review is "narrow" and limited to whether the agency "examined the relevant data and articulated a satisfactory explanation for [its] decision, including a rational connection between the facts found and the choice made." *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019); *see also Smith v. Garland*, 103 F.4th 1244, 1252 (7th Cir. 2024) (noting the court "reviews agency determinations with great deference" and "cannot substitute its judgment for that of the agency" (citations omitted)).

Under the Supreme Court's decision in *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954), a federal agency must follow its own

16

regulations in exercising its authority.  *See also Martinez Camargo v. I.N.S.*, 282 F.3d 487, 491 (7th Cir. 2002) ("[C]ourts have consistently demanded governmental compliance with administrative regulations designed to safeguard individual interests.").

Petitioner entered the United States without inspection on or about April 25, 2022.  Dkt. 1 at 7.  He was apprehended upon entry by immigration authorities and issued a temporary Form I-94, which paroled him into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A).  Dkt. 1 at 7; Dkt. 10 at 2; *see* Dkt. 10-1 at 9.  Under that statutory provision, the Secretary of Homeland Security may "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  The parole "shall not be regarded as an admission of the alien."  *Id.*; *see also Samirah v. O'Connell*, 335 F.3d 545, 547 (7th Cir. 2003) ("Although a paroled alien has 'liberty to roam the country,' the law considers him legally detained at the border within the government's custody until his immigration status is determined." (citation omitted)).

Moreover, "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  8 U.S.C. § 1182(d)(5)(A).  The

17

regulations implementing 8 U.S.C. § 1182(d)(5) further provide that parole "shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized."  8 C.F.R. § 212.5(e)(1)(ii).  At that time, the alien "shall be restored to the status that he . . . had at the time of parole."  *Id.* § 212.5(e)(2)(i).

Respondents report that Petitioner's parole automatically expired as a matter of law on June 26, 2022, after 30 days.  Dkt. 10 at 2; *see id.* at 16–18; Dkt. 10-1 at 9.  The regulations did not require written notice of that termination, let alone an individualized determination or hearing.  *See Marc v. Olson*, No. 4:26-cv-00031-TWP-KMB, 2026 WL 498656, at *2 (S.D. Ind. Feb. 23, 2026) (discussing 8 C.F.R. § 212.5(e)(1)(ii) and noting "even if [alien habeas petitioner] was granted humanitarian parole, it terminated automatically . . . , and regulations do not appear to require notice, individualized determination, or hearing").  Why the government also issued a revocation letter four years later is unclear.  But what is clear is that this letter does not somehow convert the automatic expiration of Petitioner's temporary parole into an arbitrary or illegal government action four years after the fact.  Upon termination of his parole, Petitioner was "restored to the status that he . . . had at the time of parole."  8 C.F.R. § 212.5(e)(2)(i).  Petitioner's status after June 26, 2022—and, accordingly, at the time of his re-detention in April 2026—was that of an alien not admitted or paroled into the United States.  Respondents did not act arbitrarily or violate any laws or regulations by confirming the fact that his parole was no longer in effect.

Petitioner argues that "even assuming the parole's express terms set an expiration date in 2022, the regulations required DHS to act within 'a reasonable time' upon expiration" of parole to continue processing his removal and not wait four years.  Dkt. 12 at 5 (citing 8 C.F.R. § 212.5(e)(1)).  According to Petitioner, "[i]f a previously paroled noncitizen is not excluded, deported, or removed within a reasonable time, DHS 'shall again . . . release' the individual on parole unless a determination is made that 'the public interest requires that the alien be continued in custody.'"  *Id.* at 5–6 (quoting 8 C.F.R. § 212.5(e)(2)(i)).  But that precise determination is reflected in the April 14, 2026, parole termination letter the government issued to the Petitioner.  Even if this determination was not made within "a reasonable time" after the expiration of Petitioner's temporary parole, the government has made that determination now.  Thus, by operation of the very regulations Petitioner cites, Petitioner is not entitled to claim any paroled status.

In sum, Petitioner has been an "applicant for admission" regardless of his temporary parole, which expired over three years ago.  Respondents' decision to detain him without a bond hearing reflects that status.

## C.    **Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause.  *See* Dkt. 1 at 20–23, 39.  It does not.

Petitioner argues that the Due Process Clause entitles him to an opportunity to prove that he is neither a flight risk nor a danger to the community.  Dkt. 1 at 22.  However, the Supreme Court has held that

19

"[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003).  That holding settles the issue.  And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir*, 2026 WL 706485, at \*7–8.

Petitioner argues that due process requires a hearing to "consider Petitioner's individualized facts and circumstances to determine whether he is a danger to the community or a flight risk."  Dkt. 1 at 23.  But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal."  *Demore*, 538 U.S. at 528.  Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis.  Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Petitioner cites *Zadvydas* to support his argument, dkt. 1 at 39, but that case is distinguishable.  There, the Supreme Court addressed whether a post-removal-period detention statute authorized potentially indefinite detention.  In construing the statute to reject that conclusion, the Supreme Court specifically distinguished the due process issues inherent in the petitioner's indefinite detention from "detention pending a determination of removability," which has an "obvious termination point."  *Zadvydas*, 533 U.S. at 697.  Petitioner's detention here is a detention pending removal proceedings.  Thus, it does not implicate the due process concerns addressed in *Zadvydas*.

20

And even in cases like *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," *id.* at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for just over two months. Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Gerardo Antonio Vallejos-Hernandez's Petition for Writ of Habeas Corpus, dkt. [1], and **DISMISSES** this case with prejudice. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date: 6/26/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

21